IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                          No. CR 11-2860 JB

KEITH MICHAEL COURTNEY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Fourth Motion in Limine to Exclude Evidence of Private Internal Guidelines, filed March 7, 2013 (Doc. 64)("MIL"). The Court held a hearing on March 15, 2013. The primary issue is whether the Court should admit into evidence certain mortgage lenders' internal lending guidelines. Plaintiff United States of America alleges that Defendant Keith Michael Courtney committed wire fraud. According to the Indictment, filed November 11, 2009 (Doc. 2), Courtney and his co-Defendant, Jason Johns, made materially false representations to mortgage lenders, thereby inducing them to lend funds for the purchase of residential properties; the Defendants intended, according to the Indictment, to use this money to pay off existing mortgages and construction loans, and to fraudulently obtain a portion of those funds. The United States seeks to introduce the mortgage lenders' internal lending guidelines to show that the misrepresentations which Courtney made were "material" within the meaning of the elements of wire fraud. Courtney moves the Court to exclude this evidence under rules 401, 402, and 403 of the Federal Rules of Evidence. The Court will deny the MIL, because it agrees with the United States that these internal guidelines tend to show that Courtney's statements were material, and because, in light of the United States' stated

intent to eliminate any irrelevant pages from its exhibits, any risk that the evidence will confuse the jury does not substantially outweigh its probative value.

## FACTUAL BACKGROUND

Courtney was part owner of Black Diamond Construction Company, Veritas Mortgage Company, and Polaris Realty. See Indictment ¶ 1, at 1. Johns was a loan officer with Veritas Mortgage. See Indictment ¶ 2, at 1. The Indictment alleges that Courtney and Johns, "with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud the lending institutions, and to obtain money, funds and other property from the Lending Institutions by means of materially false and fraudulent pretenses." Indictment ¶ 5, at 1-2.

The purpose of the scheme and artifice is alleged to be obtaining loans from the lending institutions by inducing them to lend funds for the purchase of residential properties through the use of materially false representations, and in so do doing, to pay off existing mortgages and construction loans and to fraudulently obtain a portion of those funds. See Indictment ¶ 6, at 2. The Indictment alleges that, as part of this scheme, Black Diamond built residences at 4400 Oxbow Trail and at 17 Camino Sabañero, Santa Fe, New Mexico, the title owner of which was Courtney's mother, and she was also named on the mortgages and construction loans for these properties. See Indictment at 6(a), at 2. When Black Diamond finished construction of the houses at 4400 Oxbow Trail and 17 Camino Sabañero, Courtney and Johns contacted straw buyers with good credit, and solicited their participation in the scheme by representing that Courtney and Johns would use the straw buyers' names and credit to purchase these houses in exchange for $5,000.00 of credits or payments per house to the straw buyers once the houses were resold. See Indictment ¶ 6(b), at 2-3. Courtney told the straw buyers that he needed their

credit information only to make the initial purchases, that he would pay the mortgage payments, and that the straw buyers would not be responsible for the payments on the mortgage loans. See Indictment ¶ 6(c), at 3.

Johns filled out the straw buyers' loan applications and falsified material information to ensure that they would qualify for the mortgages. See Indictment ¶ 6(d), at 3. Johns then provided the applications to the straw buyers to obtain their signatures and sent the completed applications to the lenders. See Indictment ¶ 6(e), at 3. Before the closings, Courtney provided down payments to the title companies for the purchase of the homes, although the HUD-1 forms identified the straw buyers as the source of the down payments.[1] See Indictment ¶ 6(f), at 3. After the closings, Courtney made some of the mortgage payments on the loans for 4400 Oxbow Trail and 17 Camino Sabañero, but ultimately stopped; the houses then went into foreclosure. See Indictment ¶ 6(g), at 3-4.

Starting apparently as early as July 2006, Courtney began investing in Vista Studios, which was a project to use existing buildings in a location near Santa Fe to provide a training facility for movie technicians. See Cashier's Check from Keith Michael Courtney to Vista Studios Inc. at 1 (dated July 5, 2006), filed March 7, 2013 (Doc. 65-1); United States' Response to Defendant's Fifth and Sixth Motions in Limine to Exclude Evidence of Vista Studios Investments (Docs. 65 and 66) at 1, filed March 13, 2013 (Doc. 78)("Vista Studios Response"). On or about November 11, 2006, Johns executed a promissory note in favor of Joelle E. Nisolle, which lists the borrower as "Keith Michael Courtney and/or Jason Johns," and states that, "[f]or

---

[1] "The HUD-1 Settlement Statement is a standard form in use in the United States of America which is used to itemize services and fees charged to the borrower by the lender or broker when applying for a loan for the purpose of purchasing or refinancing real estate." HUD-1 Settlement Statement, Wikipedia.org, http://en.wikipedia.org/wiki/HUD-1_Settlement_Statement (last visited Aug. 29, 2013).

value received," the borrower promises to pay to Nisolle $300,000.00. Promissory Note at 1 (dated November 11, 2006), filed March 7, 2013 (Doc. 66-1). Specifically, under the heading "Payment Due," the Promissory Note provides that the majority of the payment will be due when the funding for 4400 Oxbow Trail is made, and the rest due on November 27, 2006: "$244,496.30 and $12,967.50 ($257,471.80) due upon the funding of Lot 163, Oxbow North Subdivision, Bernalillo County, NM. The balance of $42,528.20 will be due by the 27th of November, 2006." Promissory Note at 1.

Courtney's mother as the seller and Rhonda Smith as the buyer entered into a purchase agreement on or about November 1, 2006, for $997,500.00 for 4400 Oxbow Trail. See Indictment ¶ 6(h)(1), at 4.[2] Johns falsely stated that Smith was purchasing the house as a primary residence. See Indictment ¶ 6(h)(2), at 4. On or about November 1, 2006, Courtney gave Smith a letter in which he said that he was liable for making the mortgage payments on the loans obtained for 4400 Oxbow Trail. See Indictment ¶ 6(h)(3), at 4. On or about November 10, 2006, Courtney provided a cashier's check in the amount of $56,955.69 to the title insurance company, which the HUD-1 Settlement Statement identifies as cash from the borrower to the seller. See Indictment ¶ 6(h)(5), at 4. On or about November 13, 2006, in reliance on the representations that Courtney and Johns made, Plaza Home Mortgage, Inc., provided approximately $960,022.50 in loan proceeds to the title company to fund the transaction. See Indictment ¶ 6(h)(6), at 4-5.

Vista Studios received an investment of $9,997.00 from Courtney on November 13, 2006. See Vista Studios Wire Transfers on November 13, 2006 at 1, filed March 7, 2013

---

[2] The Indictment uses only initials for Courtney's mother and Ms. Smith. Evidence later in the proceedings established their identities, and the Court will use their names in this memorandum opinion.

(Doc. 65-3).  Also on November, 13, 2006, Nisolle made three wire transfers to Vista Studios totaling $289,991.00.  See Vista Studios Wire Transfers on November 13, 2006 at 1.  On November 14, 2006, Courtney wired approximately $244,496.20 of the loan proceeds from 4400 Oxbow's sale to Nisolle.  See Indictment ¶ 6(h)(7), at 4.

Courtney's mother as seller and Douglas Perry and Tommye Jean Perry as buyers entered into a purchase agreement on or about August 22, 2007, to purchase 17 Camino Sabañero.  See Indictment ¶ 6(i)(1), at 5.[3]  Johns caused a loan application to be submitted to Aurora Loan Services that falsely stated that the Perrys were purchasing the house as their primary residence.  See Indictment ¶ 6(i)(2), at 5.  According to the Rio Grande Title Company's closing documents, the sale closed on September 26, 2007.  See Indictment ¶ 6(i)(3), at 4.  On or about September 26, 2007, Courtney caused approximately $75,000.00 to be wired to Rio Grande Title, which the HUD-1 Settlement Statement identifies as cash from the borrower to the seller.  See Indictment ¶ 6(i)(4), at 5-6.  On or about September 27, 2007, in reliance on the false material representations and omissions that Courtney and Johns made, Lehman Brothers Bank FSB wired approximately $641,803.34 to Rio Grande Title's bank accounts to fund the transaction, using interstate wire communications facilities.  See Indictment ¶ 6(i)(5), at 6.  On or about September 28, 2007, Rio Grande Title wired approximately $181,392.00 of the loan proceeds to Black Diamond.  See Indictment ¶ 6(i)(6), at 6.  In or about March 2008, Courtney gave the Perrys a letter stating Courtney was liable for making the mortgage payments on the loan obtained for 17 Camino Sabañero.  See Indictment ¶ 6(i)(7), at 6.

---

[3] The Indictment uses only initials for Courtney's mother and the Perrys.  Evidence later in the proceedings established their identities, and the Court will use their names in this memorandum opinion.

**PROCEDURAL BACKGROUND**

An eight-page Indictment was filed on November 9, 2011. The federal grand jury charged Courtney and Johns with three counts of wire fraud, and aiding and abetting, associated with transactions that involve complex financial instruments, transactions, records, and activity over the course of nearly one calendar year. See Indictment at 1-7. The Indictment also included a separate forfeiture count. See Indictment at 7-8.

Courtney moves the Court to exclude evidence of Aurora Loan's and Plaza Mortgage's internal lending guidelines, including copies of their internal underwriting guidelines. See MIL at 1. Courtney argues that the United States would introduce this evidence "to establish that the mortgage applications submitted by alleged co-conspirators would not have been accepted by these companies if they had stated the loans were for investment properties rather than 'owner-occupied' properties," thereby demonstrating that Courtney "knowingly engaged in fraudulent activity." See MIL at 2. In Courtney's view, because he was unaware of how Johns "presented mortgage applications *and* was unaware of how these private entities would interpret those mortgage applications," the evidence lacks "probative value because it cannot make any fact of consequence *as to Defendant* [*Courtney*] any more or less probable." MIL at 3 (emphasis in original). Courtney therefore moves the Court to exclude the evidence under rules 401 and 402. See MIL at 3. Further, Courtney argues that the Court should exclude this evidence under rule 403, "because these are internal, non-public guidelines that are not legally binding," and because they are therefore highly likely to confuse the jury. MIL at 3.

The United States responds that it offers this evidence for a different purpose: to prove the materiality of the statements that Courtney made. United States' Response to Defendant's Fourth Motion *In Limine* To Exclude Evidence of Private Internal Guidelines (Doc. 64) at 1,

filed March 13, 2013 (Doc. 77)("Response").  The United States notes that, to satisfy its burden under 18 U.S.C. § 2, it must prove that the misrepresentations which Courtney made were material.  See Response at 1.  The United States, therefore, offers exhibits and testimony about the mortgage lenders' lending standards to demonstrate that the lenders would not have authorized these loans if Courtney had described them accurately, because "no-documentation loans were authorized largely on the basis that the borrowers filling out the loan applications were the actual borrowers, and on the basis of the credit histories of the named borrowers." Response at 2.  The United States goes on to state that, "[i]f the named borrowers filling out the loan applications had no intention of living in the residences or making mortgage payments, and the payments were to be made by someone unknown to the lenders," the United States' witnesses "will testify that their respective program guidelines would not have allowed for the loans to be made."  Response at 2.  In the United States' view, while its witnesses "have sufficient experience with their respective companies to testify about the availability of no-documentation loan products for primary residences at the charged times," the exhibits it offers corroborate the testimony of these witnesses and provide the jury with "documentary evidence of the program guidelines."  Response at 3.  The United States further argues that "the program guidelines were not merely for internal use, but were available to all approved mortgage brokers."  Response at 3.  The United States underscores, however, that "whether they were only for internal use of the lenders, which they were not, is irrelevant to the testimony of the lenders' witnesses, who must inform the jury about the particular guidelines for the loans authorized in this case."  Response at 3.  The United States argues that, because it charged Courtney and Johns with aiding and abetting each other in this scheme, it does not need to prove Courtney knew the details of the loans.  See  Response at 4.  Instead, the United States argues, it needs to prove only that

Courtney intentionally associated himself with the fraud.  See  Response at 4.  The United States argues, therefore, that, even if Courtney did not know the details of the loan products involved, he "knew the entire loan application process was fraudulent."  Response at 4.  According to the United States, Courtney therefore "knowingly participated in the fraud on the lenders with Jason Johns.  Evidence about the details of the loan fraud, therefore, are [sic] applicable to him and relevant to the charges against him."  Response at 5.

The Court held a hearing on March 15, 2013.  See Transcript at 20:3-4 (taken March 15, 2013)("Tr.").[4]  Courtney noted that the United States says in its Response that the witnesses it would present have sufficient experience to testify to the relevant loan guidelines.  See Tr. at 21:8-13 (Blackburn).  In light of this statement, Courtney argued it is unnecessary for the United States to introduce into evidence, for example, the eighty pages of lending guidelines contained in one of the United States' exhibits; in his view, much of this material is irrelevant, because it does not govern the loans at issue.  See Tr. at 21:8-22:14 (Blackburn).  To further explain his objection, Courtney offered an analogy: that admitting this evidence would be like admitting the entire owner's manual of a car in a case relating to the repair of a single issue in the car.  See Tr. at 22:15-23 (Blackburn).  Courtney argued that the documents were cumulative, unnecessary, and irrelevant.  See Tr. at 23:6-14 (Blackburn).  The Court asked if Courtney would be satisfied if the United States would offer only certain portions of the guidelines; Courtney said he would still ask the Court to exclude the evidence.  See Tr. at 23:16-21 (Court, Blackburn).  Upon prompting by the Court, Courtney conceded that the evidence does have some relevance, but argued that the Court should not admit the many irrelevant pages of the offered exhibits, because

---

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

the cumulative effect of the lengthy documents and their corroboration of the witnesses' testimony could lead the jury to believe that the United States' case is strong simply because its exhibits are lengthy.  See Tr. at 24:6-25:25 (Court, Blackburn).

In response, the United States first noted that in a previous, unrelated mortgage-fraud trial, a defendant had criticized the prosecution, because the prosecution had not corroborated its witnesses' testimony with similar guidelines; upon the Court's questioning, the United States indicated it might be less concerned if Courtney agreed not to present that argument.  See Tr. at 26:3-27:13 (Higgins, Court).  The United States reiterated its view that the Court should admit the evidence to buttress its witnesses' credibility.  See Tr. at 26:15-26:25 (Higgins).  The United States agreed that it would pare each of the exhibits to only several pages, if Courtney agreed to refrain from criticizing the accordingly shorter length of the exhibits; Courtney so agreed.  See Tr. at 27:1-9 (Higgins, Court, Blackburn).

The Court indicated that it would admit the evidence, provided the United States abided by its agreement to cut down the volume of the evidence of the guidelines.  See Tr. at 27:19-20 (Court).  The Court agreed that the evidence was relevant.  See Tr. at 27:23 (Court).  The Court further concluded that, if the United States would eliminate from the exhibits the many irrelevant portions of the loan guidance documents, it would eliminate any unfair advantage that could arise from the disproportionately large physical volume of evidence that the United States would present.  See Tr. at 27:22-28:5 (Court).

## LAW REGARDING RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant

evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")). "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotations omitted). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d

1262, 1274 (10th Cir. 2000). The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

**ANALYSIS**

The Court will admit the evidence.  The Court agrees with the United States, as Courtney conceded at the hearing, that the loan guidance documents tend to make the United States' allegation that the misrepresentations which Courtney made were material more probable than it otherwise would be.  The Court will not, therefore, exclude the evidence as irrelevant under rules 401 and 402.  Further, in light of the United States' stated intention to modify its proposed exhibit, the Court agrees with the United States that the risk of confusing the jury does not substantially outweigh the evidence's probative value.  The Court will not, therefore, exclude the evidence under rule 403.

**I.     THE LOAN GUIDANCE DOCUMENTS ARE RELEVANT, BECAUSE, AS COURTNEY CONCEDES, THEY TEND TO MAKE THE UNITED STATES' ALLEGATION OF MATERIALITY MORE LIKELY THAN IT OTHERWISE WOULD BE.**

In his MIL, Courtney, assuming that the United States intends to offer the lenders' loan guidance documents as evidence that he knowingly engaged in fraudulent activity, argues that the Court should exclude the documents as irrelevant.  Courtney points out that, because these documents were internal documents, he could not have known of their contents and that they therefore could not be probative of his state of mind.  In its reply and at the hearing, the United States indicated that it offered the documents as evidence of a different element: materiality -- that is, that Courtney's statements had "a natural tendency to influence, or [are] capable of influencing, the decision of the decisionmaking body to which it was addressed."  Neder v. United States, 527 U.S. 1, 16 (1999).  The United States offers the testimony of witnesses that these lending guidelines would have prohibited issuing the loans under these circumstances, and it intends to offer these guidelines to corroborate the testimony of these witnesses.  As Courtney

conceded at the hearing, this evidence is relevant for the purpose for which it is offered. The Court will not, therefore, exclude this evidence under rules 401 and 402.

II. **IN LIGHT OF THE UNITED STATES' AGREEMENT TO ELIMINATE IRRELEVANT PORTIONS OF THE LOAN GUIDANCE DOCUMENTS FROM THE EXHIBITS IT WILL OFFER INTO EVIDENCE, THE RISK OF JURY CONFUSION DOES NOT SUBSTANTIALLY OUTWEIGH THE EVIDENCE'S PROBATIVE VALUE.**

Courtney argues that the Court should exclude this evidence under rule 403, for two reasons. First, he argues in his MIL that these documents are "internal, non-public[, and] not legally binding," and that presenting them would mislead the jury into believing otherwise. MIL at 3. Second, he suggested at the hearing that admitting loan guidance documents of considerable length -- only a few pages of which are relevant to the loans at issue -- would give the jury a distorted picture of the strength of the United States' case, simply because of the volume of the documents it offered into evidence. The Court disagrees with both arguments, and will not, therefore, exclude the evidence under rule 403.

The Court does not agree that it should exclude the evidence on the first basis Courtney identifies. It is true that the evidence is "internal, non-public[, and] not legally binding." That fact alone, however, is not enough to render the evidence likely to confuse the jury. The guidelines are not offered as external, public, or legally binding; they are offered as evidence that the statements Courtney made are material. The loan guidelines -- even if they are "internal, non-public[, and] not legally binding" -- prohibit the lending involved, and are, therefore, highly probative of materiality. Any risk that the evidence might confuse the jury does not substantially outweigh the evidence's probative value.

In light of subsequent developments, the Court also does not agree with Courtney's second argument. The length of the exhibits as they were originally offered initially gave the

-13-

Court pause, because the sheer volume of paper could mislead the jury about the weight of the United States' case. The United States, however, indicated it would reduce the exhibits to only the pages that are relevant to the loans involved in this case. This concession eliminates Courtney and the Court's concern. The Court will, therefore, deny the MIL.

   **IT IS ORDERED** that Defendant's Fourth Motion in Limine to Exclude Evidence of Private Internal Guidelines, filed March 7, 2013 (Doc. 64), is denied.

                    _____
                     UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
 Unites States Attorney
Mary L. Higgins
 Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Adrienne Wisenberg
Solomon Wisenberg
Barnes & Thornburg LLP
Washington, District of Columbia

-- and --

Billy R. Blackburn
Albuquerque, New Mexico

   *Attorneys for the Defendant*